[Civ. No. 8199. First Appellate District, Division One.—January 16, 1933.]

J. SHERRIFFS, Appellant, v. W. P. HAMMON, as Trustee and Individually, Respondent.

W. H. Metson, Alex Sherriffs, Maxwell McNutt, E. B. Mering and A. H. Ricketts for Appellant.

Charles W. Slack and Edgar T. Zook for Respondent.

STROTHER, J., *pro tem.*—This is an action by plaintiff, as the assignee of Jafet Lindeberg, to recover the sum of $95,745.21, alleged sale price of 538 shares of the capital stock of Miners and Merchants Bank of Alaska. The case went to trial on the issues raised by a third amended complaint and defendant's answer. Upon the conclusion of plaintiff's evidence, plaintiff applied to the court for leave to file a fourth amended complaint "to conform to proof". Leave was granted, the court reserving any ruling as to the conformity.

This complaint alleges Lindeberg's ownership of the 538, out of a total of 1,000, shares of the bank stock; that on September 7, 1922, by an agreement in writing, he sold defendant 250 shares of the stock "at the agreed price of the net asset value or book value thereof as of September 30, 1924"; that by said agreement he gave defendant an option to purchase his remaining 288 shares at the same ascertainable price as the other stock; that the 250 shares were delivered, and that on January 16, 1923, defendant exercised the option to purchase the 288 shares, and received the same. It is alleged, on information and belief, that on September 30, 1924, the net asset value or book value of the stock was $250 per share, and that on that date there became due to Lindeberg from defendant $134,500, of which no part has been paid except $38,754.79, leaving unpaid $95,745.21, for which judgment is demanded.

Judgment was rendered in favor of defendant, from which plaintiff appeals, bringing up the record in a bill of exceptions.

The court found that the sale of the 250 shares of stock by Lindeberg to defendant in September, 1922, was not at the price and upon the terms alleged in the complaint, but was upon the consideration of the payment by defendant, on March 2, 1922, of the sum of $12,500, on account of an indebtedness of Lindeberg to the Anglo-California Trust

Company of San Francisco, with interest from that date to September 8, 1922; that Lindeberg gave defendant an option to buy the 288 shares upon substantially the terms alleged in the complaint, but that defendant never exercised the option; that on March 2, 1922, and long prior thereto, Lindeberg was indebted to Anglo-California Trust Company in the sum of $25,000, as security for which he had pledged 499 shares of the stock of the Alaska bank; that on that date the defendant, at the request of Lindeberg, paid the trust company $12,500 on account of his indebtedness, and received from the bank, at Lindeberg's request, a certificate for 250 shares of stock of the Alaska bank, which it was agreed defendant should hold as security for the money advanced by him to the trust company on Lindeberg's account; that on or about September 8, 1922, Lindeberg sold the 250 shares to defendant in consideration of the payment made the trust company, and interest from March 2 to September 8, 1922; that on November 25, 1922, defendant, at the request of Lindeberg, paid to the trust company the balance of the principal of $12,500 owing from Lindeberg, with accrued interest, and an assessment of $50 per share which had been levied on the bank stock, amounting in all to $25,897.97, and, by agreement with Lindeberg, took over from the trust company and held as collateral security for the repayment of that amount, the 249 shares of bank stock; that on February 21, 1923, in consideration of the payments so made by defendant, and the purchase from Lindeberg by defendant of certain shares of stock in a mining company for which cash payment was made, Lindeberg sold to him said 249 shares.

The question presented by the record on appeal is whether or not the findings of the court of the sales of the two blocks of stock by Lindeberg to the defendant are supported by the evidence.

There was no conflict in the evidence as to the payments made to the trust company to the account of Lindeberg's indebtedness, or that the several transfers of stock by the trust company to defendant were made as found by the court, and the payment of the stock assessment.

In the latter part of August, 1922, defendant started for Nome, Alaska, where the bank was located, on business in connection with gold mining property owned by a company

which he controlled. The bank at that time was in a somewhat precarious condition, and Lindeberg gave him authority to represent his stock in a reorganization of the bank. Evidently there had been, before that time, some talk between the parties of the sale of at least a part of the stock to defendant. Before defendant left San Francisco for Nome, Lindeberg handed defendant three letters, two addressed to him and one to J. J. Cole, of Nome, a business associate of Lindeberg. One of those to defendant, which was a copy of a letter written to him in June, but which defendant had not received, was as follows:

"My dear Mr. Hammon: We would like to interest you in 538 shares of the capital stock of the Miners & Merchants Bank of Nome, Alaska. You can now buy 250 shares thereof at the determined value of its then net assets on September 30, 1924, and transfer will be made to you directly. At this time transfer can be made to you of the balance—288 shares—to be held by you as trustee. This will give you control of the bank and the power to elect directors and officers, you to buy now but pay for the 288 shares on September 30, 1925, at a price based upon the then value of the bank's net assets. All dividends on the 288 shares prior to the actual sale are to revert to me.

"Yours very truly,
"JAFET LINDEBERG."

The following part of the other letter to defendant—date August 25, 1922—relates to the transaction:

"Dear Mr. Hammon: I am now handing you an original letter, addressed to Mr. Cole, referring to our understanding regarding the bank; also copy of a letter on my proposition to you for the future stock purchase, which letter and enclosure you are to hand to Mr. Cole soon after your arrival in Nome. I wish to say now, that you will not be compelled to purchase the second allotment of stock of 288 shares, as you can have the same use and power without actually owning the stock, and I feel that I can hold this stock, if given a little time, and that it will be one of my investments that will at all times pay good dividends."

After arriving at Seattle, whence he was to sail for Alaska, defendant, on September 1, 1922, wrote Lindeberg

a letter, the parts relating to the stock transaction being quoted:

"Dear Mr. Lindeberg: During the last two days' rush at home I neglected to read your letter of 25th inst., until on the train en route for Seattle, and was rather disconcerted on account of the possible misunderstanding, rather than understanding, between us as you have written Mr. Cole and have stated in your letter to him, and I hasten to bring the matter to your attention before anything further might be done regarding the bank matters. What I tried to explain to you, and thought you acquiesced in, was this: That in case I found it possible to harmonize the bank interests in a manner that would take care of the interests concerned, without further contention, and save the bank from an ultimate collapse, I would be willing to take a direct interest in it, provided you sold to me now the 250 shares that I hold and gave me an option on the 288 shares mentioned in your letter to me of May 15th, 1922, payable in 1924 at the determined value of its then net assets or actual book value. Myself and friends who would be associated with me in such an undertaking could not afford to take up a situation such as exists at Nome on a much different basis. My apprehensions of the distress of the bank, which has been apparent, were confirmed most emphatically here yesterday in Seattle. . . . It will not be possible for me to carry the 288 shares without an option to purchase on a defined basis, because conditions are such that, in case I go ahead, I am likely to need the support of others than myself, which they would not be willing to give unless they might be stockholders of a fair position in the bank. Of course, I am only predicting now and trying to provide for an emergency that I do not fully understand at this time. Trusting you will not hesitate to be frank and direct to the point with me, I beg to remain,

"Sincerely yours,
"W. P. HAMMON."

On September 8, 1922, Lindeberg telegraphed defendant: "Will sell part now and give option balance confirming your letter first." On February 8, 1923, defendant wrote to Lindeberg the following letter:

"Dear Mr. Lindeberg: With reference to the Miners & Merchants Bank of Nome stock that I am taking over from

you, I am turning this interest over to the Hammon Consolidated Gold Fields, and it is quite necessary for me to make a definite statement of the obligations and terms of the purchase. The 250 shares that I took up on March 2, 1922, from the Anglo-California Trust Company was delivered to me and the $50 per share assessment has been paid. I, also, took care of the $50 per share assessment on the 249 shares held by the Anglo-California Trust Company and paid them $155.40 covering interest to May 25, 1923. The only point in question now is the time to carry these 249 shares. In my letter to you under date of September 1, 1922, written at Seattle, and to which you replied by wire, it was understood that I was to have an option on this stock to September 1, 1924, after which time I was to pay to your account its then net book or sales value, less, of course, the assessment and the interest on the note advanced, which should be six per cent, the same rate we are now paying the Anglo-California Trust Company. I shall be glad to have a statement from you setting forth the facts as you understand them to be and whether or not the above is in agreement as you understand it. Your kind attention to this will be appreciated.

"Very truly yours,<br>"W. P. Hammon."

Again, on January 16th, he wrote him a letter containing this paragraph:

"The two hundred and fifty shares of stock that I bought outright at Nome have been delivered. The two hundred and fifty shares held by the Anglo-California Trust Company are still held by them, against which they hold my personal note which I can redeem at any time that I may desire. The note is for their loan to you of $12,500.00 on the stock and $12,500.00 which was advanced for the assessment."

Defendant testified that he received no reply to either of these letters, and that in subsequent conversations he mentioned the letters to Lindeberg, and he did not deny receiving them.

On or about February 21, 1923, defendant and Lindeberg met, and the following is defendant's account of what was said at that time and in a conversation shortly preceding it: "We discussed the subject matter of the letters. He

wanted to sell me at that time some of the Pioneer Mining and Ditch Company stock. I told him that I was not interested in the stock and did not care to purchase it. He urged me to do so. I think he asked sixty cents a share for it, and I said to him that in my opinion it was not worth that. I did not want to take it on that basis—I was not interested. I wanted to settle the remainder of the bank stock—the 249 shares. We did not come to any agreement on that day. He came back on February 21, 1923, and I then told him that I would give him forty cents a share for the Pioneer Mining and Ditch Company stock, provided that he would make a definite settlement for the 249 shares of the bank stock. There was then considerable interest which had accumulated and I offered to waive the interest. I made the proposition to take the 249 shares that I held for just the face of the account, without interest, and when I said that I would buy the stock of the Pioneer Mining and Ditch Company on that condition, he said he was ready to make the settlement. I told him that I had already arranged to sell the 250 shares of the bank stock to Hammon Consolidated Gold Fields, and wanted to turn over the 249 shares to the Hammon Consolidated Gold Fields on a definite basis. Mr. Lindeberg wanted to get some more money on the 249 shares, and I said I could not advance any more money on that stock, that that was all it was worth, and that we had purchased other bank stock and nobody had ever received more than $50 a share, we paying the assessment. I asked him if he wanted to do that, and he accepted it. I waived the accumulated interest and gave him my check for $500 on account of the Pioneer Mining and Ditch Company stock.''

Lindeberg testified on behalf of the plaintiff. The only conflict between his testimony and that of defendant was in his denial that the sale of the bank stock was mentioned in connection with that of the Pioneer Mining and Ditch Company, or that any sale of the bank stock was consummated.

There was ample evidence to support the findings of the court, and, whatever the conflicts in the evidence were, those were for the trial court to determine, and its conclusions will not be disturbed on appeal.

The judgment is affirmed.

Knight, Acting P. J., and Cashin, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on February 15, 1933, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 16, 1933.